United States of America,
        Plaintiff,
  v.
MEHRDAD HAKIMIAN
        Defendant.

No. CR-09-0021 DLJ

On March 18, 2010 Defendant Mehrdad Hakimian (Hakimian) was found guilty by a jury of conspiracy to commit wire fraud, of wire fraud and of obstruction of justice. On April 9, 2010, Hakimian filed a motion for a new trial. On June 4, 2010 this Court held a hearing on the motions. Attorneys Stephen Corrigan and Wade Rhyne appeared on behalf of the United States and defendant was represented by Attorneys William Osterhoudt and Frank Moore. Having reviewed the papers and having heard oral argument on this matter, the Court finds the following.

A. <u>Background</u>

Defendant Hakimian was originally charged with conspiracy to commit wire fraud; nine substantive counts of wire fraud in violation of 18 USC § 1343; and two counts alleging the harboring of specific illegal aliens in violation of 18 USC § 1512(c).

On January 14, 2010, a Superseding Indictment was returned charging the defendant additionally with conspiracy to commit visa fraud and ten substantive counts of visa fraud in violation of 18 USC §§ 371, 1546(a). These charges alleged that defendant had signed H1B Visa applications for employees, which applications contained materially false information.

Additionally, the Superseding Indictment charged the defendant with obstruction of justice pursuant to 18 USC § 1512(c)(1) in connection with the removal of documents from the company offices after execution of a search warrant in December 2006.

On February 5, 2010 the defendant pled guilty to all of the visa fraud related counts in the Superseding Indictment except Count 24, which count the government subsequently dismissed. At that time Defendant also pled guilty to Counts 11 and 12 from the original Indictment, which had charged him with harboring two illegal aliens. These guilty pleas were placed under seal at the defendant's request.

A six week jury trial followed. At the end of the trial, the jury found defendant guilty on all remaining counts. Defendant has now filed a motion for a new trial, alleging that the Court erred in several evidentiary rulings and in its jury instructions.

B. <u>Legal Standard</u>

The Court is not required to order a new trial unless it determines that the "interest of justice so requires." Fed. R. Crim. P. 33(a). A motion for new trial should be granted "only in an exceptional case in which the evidence weighs heavily against the verdict." <u>United States v. Merriweather</u>, 777 F.2d 503, 507 (9th Cir 1985). <u>See</u> <u>also</u> <u>United States v. Steel</u>, 759 F.2d 706, 713 (9th Cir. 1985) (affirming district court's denial of a new trial as a matter of "sound discretion" of the district court).

C. <u>Discussion</u>

    1. Was Hakimian Unduly Prejudiced by the Admission of Evidence Relating to Visa Fraud?

The superseding Indictment charged Hakimian with, among other charges, two counts of harboring illegal aliens, one count of conspiracy to commit visa fraud, and ten counts of visa fraud. Prior to trial, Hakimian pleaded guilty to the counts of visa fraud and to the counts of harboring illegal aliens. Hakimian proceeded to trial only on the wire fraud conspiracy, wire fraud, and obstruction of justice counts.

Defendant argues that at the February 12, 2010 pretrial conference and during trial he objected to the government being allowed to admit at trial information related to defendant's fraudulent visa applications for his employees. During the trial the government called as witnesses some of Hakimian's current and former employees, including Bobby Guinto, Francis Zamora, Antonette Morante, Joselito Lim, and Ida Manese. Some of these witnesses testified that they over-billed insurance companies at Hakimian's direction. During their testimony, the government also introduced fraudulent H1-B visa petitions sponsored and signed by Hakimian and established that Hakimian had submitted these fraudulent visa petitions on behalf of the testifying employee.

Defendant argues that the Court should not have permitted this questioning as it was unfairly prejudicial to the defendant; "it consumed court time and required him to respond to numerous questions about it"; and "[i]t diverted the jury's attention from the issues on trial. Defendant's Motion

1 at p.8. Defendant further argues that receipt of this evidence
2 was particularly prejudicial to him because he was precluded
3 from testifying that he had pled guilty to these charges.
4 Defendant argues that there was no justification for the
5 receipt of this evidence, which fundamentally violated the
6 defendant's due process right to a fair trial as well as Rule
7 404(a) of the Federal Rules of Evidence. See <u>United States v.</u>
8 <u>Bradley</u>, 5 F.3d 1317, 1320 (9th Cir. 1993). In his reply he
9 adds that as the fraudulent petitions were created by an entity
10 known as JobLink and were entered into before the visa fraud
11 happened, that they are not relevant.

12     The admission of this evidence is governed by Federal
13 Rule of Evidence 404(b). Rule 404(b) permits "other acts
14 evidence" when it "relevant to an issue other than the
15 defendant's criminal propensity." <u>United States v. Chea</u>, 231
16 F.3d 531, 534 (9th Cir. 2000) (quoting <u>United States v.</u>
17 <u>Mehrmanesh</u>, 689 F.2d 822, 830 (9th Cir. 1982)). Evidence of
18 prior acts is admissible under Rule 404(b) if: (1) the evidence
19 tends to prove a material element of the offense charged; (2)
20 the prior act is not too remote in time; (3) the evidence is
21 sufficient to support a finding that the defendant committed
22 the other act; and (4) in cases where knowledge and intent are
23 at issue, the act is similar to the offense charged. <u>United</u>
24 <u>States v. Ogles</u>, 406 F.3d 586, 592 (9th Cir. 2005).

25     Defendant's argument focuses on the first prong, and
26 also on the issue of prejudice. Defendant concedes that
27 evidence that defendant harbored the illegal aliens would have
28 been relevant to the government's theory of the substantive

4

insurance fraud case, but that evidence that defendant committed visa fraud on their behalf was not relevant. According to defendant, the visa fraud is simply "other crimes or wrongs" charged against him for which he is not on trial.

First, defendant acknowledges that the Court did sustain many of defendant's objections during trial as to the testimony on this issue and also that the Court limited the amount of testimony admitted. The government asserts that the evidence which was admitted was proper because it was "inextricably intertwined" with the wire fraud conspiracy. Where evidence is necessary to provide context for the charged crime it may be exempt from Federal Rule of Evidence 404(b), and may be admitted. United States v. Collins, 90 F.3d 1420, 1428 (9th Cir. 1996). See also United States v. Hattabaugh, 295 Fed. Appx. 249, 251 (9th Cir. 2008) (approving admission of prior real estate fraud by the defendant to explain the defendant's actions in a wire fraud scheme).

To be considered "inextricably intertwined", the testimony must have "an important factual connection" with the charged offense. United States v. DeGeorge, 380 F.3d 1203, 1220 (9th Cir. 2004). (prior losses have important factual connection with charged offenses as they assist jury in understanding scheme).

The government argues that the visa fraud evidence was necessary to explain how Hakimian could rely on these foreign workers to commit insurance fraud. The prosecution's theory was that because Hakimian illegally sponsored these employees, Hakimian had power over them to have them commit fraud on his

5

behalf.

Citing United States v. McKoy, 771 F.2d 1207, 1214 (9th Cir. 1985),the government further argues that the visa fraud evidence was admissible under Rule 404(b). Evidence of prior bad acts which explain the nature of the relationship between the defendant and a witness is independently admissible under Rule 404(b). In McKoy, the defendant was charged with a conspiracy to sell stolen goods. A government witness testified that he arranged to buy the goods from the defendant and his actions in the conspiracy were done at the instruction of the defendant. The defendant denied any involvement with the witness in the conspiracy. Id. at 1209. The government witness testified that he had engaged in prior sales of stolen goods from the defendant. Id. at 1213. The Ninth Circuit affirmed the district court's admission of the "other acts" evidence, holding that the witness's testimony explained the relationship between the witness and defendant as a buyer and seller of stolen goods, which explained to the jury the subsequent actions of the witness in the conspiracy. Id. at 1214. The prosecution argues that similar to McKoy, the visa fraud testimony here gave the jury an explanation for the employee witnesses' actions in the conspiracy.

Hakimian objects to this argument, asserting that the evidence demonstrated that employees felt free to leave Glass Masters when they wanted to and generally found employment, and even new visa sponsors elsewhere. Since defendant intimated that Bobby Guinto had acted on his own to enter the fraudulent billings, the evidence of the visa application was relevant to

6

the issue of the relationship between Hakimian and Guinto. To the extent that other employees who engaged in fraud eventuually left and found other sponsors, the government counters that defendant's argument only goes to the weight of the evidence, not its admissibility under Rule 404(b).

Defendant further argues that even if the evidence were relevant and admissible, the Court should have precluded it as unduly prejudicial under Federal Rule of Evidence 403. Federal Rule of Evidence 403 excludes evidence if the probative value is "substantially outweighed" by unfair prejudice. Fed. R. Evid. 403. Rule 403 "is largely a matter of discretion with the trial judge." United States v. Sangrey, 586 F.2d 1312, 1314 (9th Cir. 1978), as long as the court has engaged in a balancing of the probative value verus the prejudice.

Given that defendant argued that the employees were engaging in fraud on their own, the visa fraud evidence was probative evidence of Hakimian's control over these employees and his own involvement in the wire fraud conspiracy. Moreover, the Court did take into consideration the potential for prejudice to defendant of evidence which could portray him as an employer who willfully flouts the law, however the Court determined that the visa fraud evidence's probative value was not substantially outweighed by unfair prejudice.

Hakimian contends finally that the prejudicial impact of the visa fraud evidence was compounded by the Court's refusal to inform the jury that Hakimian had entered pleas of guilty to the charged visa fraud counts. Hakimian cites no legal support for this assertion nor any part of the record to support that

7

he made a request during trial to have that evidence admitted. Nor is there any way to know at this juncture whether the jury would have looked favorably or negatively in this context on the evidence of defendant's pleas of guilty.

The government argues that Court properly precluded evidence of the Hakimian's pretrial pleas, and further claims that any prejudice to defendant was offset by Hakimian's testimony that he took full responsibility for his submission of the false documents and his rationale for having engaged in that behavior.

The Court finds that there was no reversible error on the issue of admission of visa fraud evidence.

2. Did the Court Exclude Evidence of Repayment, and Was That an Error?

Hakimian was first notified of over-billing allegations when State Farm informed him of its investigation in 2005. By February 2006, Hakimian had entered into a settlement of these allegations with State Farm wherein he paid them $1.2 million. The government alleges that this settlement was made in response to State Farm's threat that they would bring a civil lawsuit against Hakimian.

In 2009, after criminal charges were filed against Hakimian, he made additional payments to other insurance companies. Hakimian alleges through counsel that he wanted to make these repayments in 2007 after the filing of the criminal complaint, but that he was counseled by his lawyers not to do so.

8

Defendant contends that evidence of his repayments was relevant to the issue of his intent and could have supported an argument that these over-billings were inadvertent or made by mistake and that the Court should have permitted such evidence.

First, as to defendant' payments to and settlement with State Farm, defendant has cited to no attempt on his part to admit the 2006 repayments, nor are there any citations to the record to support the notion that the Court ruled to exclude them.

As to the October 2009 repayments to various insurance companies, these repayments, coming on the eve of trial, were not relevant to Hakimian's intent at the time he was alleged to have committed the fraud. Intent is "shown by examining the scheme itself." United States v. Bohonous, 628 F.2d 1167, 1172 (9th Cir. 1980).  Therefore this evidence was properly excluded.

   3.   Emma DeGuzman

DeGuzman was originally a co-defendant in this matter. Prior to the trial DeGuzman plead guilty to the alien harboring and conspiracy to commit visa fraud charges and is now awaiting sentencing on those counts.  Defendant makes two arguments relating to Emma DeGuzman.  First, defendant argues that the Court should have compelled the government to immunize DeGuzman so that she would testify.  Second defendant takes issue with the Court's instruction to the jury that DeGuzman was unavailable as a witness generally, arguing that the instruction should have read that DeGuzman was unavailable only to the defendant.

A. <u>Immunity</u>

Defendant alleges that DeGuzman was an active participant in the events giving rise to the obstruction charge in Count 13. Defendant subpoenaed DeGuzman with the idea that she would give testimony exculpatory to him on the obstruction charge. On advice of counsel DeGuzman represented that were she called as a witness would claim her Fifth Amendment privilege. Defendant then requested that the Court grant DeGuzman use immunity pursuant to 18 USC § 6002, or compel the government to do so. The Court reviewed the request but ultimately denied it.

18 U.S.C. § 6002 empowers federal prosecutors to immunize testifying witnesses, but it does not mandate them to do so. The government must exercise its power to immunize consistent with the Fifth and Sixth Amendments. However, in order to compel the government to immunize a witness, the defendant must show that the witness's testimony is relevant and that (1) the prosecution intentionally caused the defense witness to invoke the Fifth Amendment right against self-incrimination with the purpose of distorting the fact-finding process; or (2) the government granted immunity to a government witness, but denied immunity to a defense witness whose testimony would have directly contradicted that of the government witness, with the effect of so distorting the fact-finding process that the defendant was denied a fundamentally fair trial. <u>United States v. Straub</u>, 538 F.3d 1147, 1162 (9th Cir. 2009).

Hakimian proffered that DeGuzman would testify that

"before the boxes were moved from the office, she determined which of the boxes situated in the upstairs loft should be sent to storage, and which should be thrown away due to their age due and the lack of any further need for them." (Def.'s Mot. for New Trial 15.) In order for the Court to compel immunity for a witness, that witness' testimony must "directly contradict" a government witness. Id.

In Straub, the Court found that the government's refusal to immunize the sole defense witness who was the only witness who could undermine the prosecution's key witness was fundamentally unfair, especially when the government immunized all but one of its witnesses. Straub, 538 F.3d at 1164. Under Straub, for the Court to force the government to grant a witness immunity, it is not sufficient for defendant to show that the witness's testimony would support defendant's version of the facts. The Fifth Amendment "does not create a general right for a defendant to demand use immunity for a co-defendant...." The requirement to order use immunity applies only in "exceptional cases" where the defendant's right to a fair trial would otherwise be violated. Id. at 1166.

Defendant has not identified which government witness' testimony DeGuzman would contradict. The immunized testimony received in the trial was from Linda Macom, Antoinette Morante, and Nanette Guinto. These witnesses' testimony all went to the insurance fraud counts, not to the obstruction of justice count. Since no immunized government witness testified concerning who selected boxes of documents at the corporate office to be destroyed or relocated, Hakimian's argument fails.

Defendant argues that the government's reading of Straub is too narrow, but the Court finds that Straub sets out certain proscriptions which must be met here and which have not been.

While Hakimian argues that the effect of denying DeGuzman immunity distorted the fact-finding process, that is only one prong of the necessary showing. As discussed above, Hakimian must first show that DeGuzman would directly contradict a government witness, which he has not done. While Hakimian argues for the Court to adopt a more expansive reading of Straub expanding the requirement of immunity beyond instances where there is a direct contradiction, Straub counsels prudence. The Court mindful of the separation of powers issues inherent in invading the province of the prosecution, sees no reason to act beyond the limits enunciated in Straub.

Nor has Hakimian met the other possible showing under Straub, that the prosecution intentionally caused the defense witness to invoke the Fifth Amendment right against self-incrimination with the purpose of distorting the fact-finding process. Hakimian alleges that prosecutors admonished DeGuzman's attorney that DeGuzman should not testify in support of Hakimian, or "it would go badly for DeGuzman at sentencing." (Def.'s Mot. For New Trial 16.)

As support for its premise that this alleged statement required a grant of immunity, Hakimian relies on People v. Treadway, 182 Cal.App. 4th 562, 564 (2010). In Treadway, a prosecutor prevented the witness from testifying by conditioning a plea agreement on the witness's promise to not

1 testify. The court held that by blocking the defendant from a
2 witness, the government violated the defendant's right to
3 compel witnesses. Id. at 567. Such is not the situation here.
4 The Court finds no evidence in the record or in its observation
5 that the prosecution took any steps to "intimidate or harasses
6 the witness to discourage the witness from testifying, for
7 example, by threatening the witness with prosecution for
8 perjury or other offenses." Williams v. Woodford, 384 F.3d 567,
9 601-602 (9th Cir. 2004).

### B. Jury Instruction on Availability

Hakimian finally argues that because the government alone had the power to compel DeGuzman's testimony through a grant of immunity, the jury should have been instructed that she was unavailable only to the defense, as opposed to the instruction given by the Court, that she was unavailable generally.

Defendant requested that the Court instruct the jury that "Emma DeGuzman is unavailable to the defense as a witness. You should draw no adverse inference against the defendant based on Emma DeGuzman's failure to testify." The defense requested, in the alternative that the Court instruct the jury that "DeGuzman was unavailable to either side." The Court agreed to give a neutral instruction that DeGuzman was unavailable and that the jury should not draw an adverse inference against either party from DeGuzman's unavailability.

Defendant argues that the instruction was misleading in that it implied that DeGuzman "was equally unavailable to the defense and the government" when the government had the ability

13

to make DeGuzman available by the "simple expedient" of offering her use immunity. As discussed above, the government was not legally obligated to offer DeGuzman immunity. Thus the government's rationale for not doing so is irrelevant to the question of unavailability.

The fact remains that DeGuzman, through her own decision to invoke the Fifth amendment, has made herself unavailable as a witness. A witness who invokes the right against self-incrimination is equally unavailable to both parties, and a missing person instruction is unwarranted. United States v. Fermin, 2000 WL 203794 at *1 (9th Cir. 2000); United States v. Brutzman, 731 F.2d 1449, 1453-4 (9th Cir. 1985), overruled on other grounds by United States v. Charmley, 764 F.2d 675, 677 n. 1 (9th Cir. 1985). Hakimian has offered no legal authority to the contrary, and the Court is aware of no case law which would find the instruction granted to be improper.

### C. Instruction on Obstruction

As to the obstruction count, The Court instructed the jury that:

> To convict Hakimian of obstruction of justice, the government must prove that: (1) Hakimian corruptly altered, destroyed, or concealed records, documents, or other objects, or attempted to do so; (2) the records, documents or other objects were related to an official proceeding, which, in this case, was a law enforcement investigation carried out by a Federal agency; and (3) Hakimian believed the records, documents or other objects would be related to a law enforcement investigation and intended to impair the integrity or the availability of the documents or objects for use in the investigation.

The Court defined "corruptly" as acting "with the

14

purpose of wrongfully impeding the due administration of justice." The Court also instructed the jury that "the government is not required to prove that the defendant knew that his acts or omissions were in violation of an applicable federal statute." (Docket No. 86, Final Jury Instruction, at pp. 17-18.) Defendant argues in his motion that the second clause of the instruction was inconsistent with the first, and thus the instruction was in error.

The Court was not required to instruct the jury that defendant knew his acts or omissions were in violation of the specific statute, 18 U.S.C. § 1512(c)(1). Again, defendant has cited no authority requiring an instruction that defendant must know of the existence of § 1512(c)(1) and have the intent to violate that particular statute.

The Court's instruction was in accord with Ninth Circuit law. The Ninth Circuit, in interpreting the phrase "corruptly persuade" in 18 U.S.C. § 1512(b), defined "corruptly" as conduct motivated by an inappropriate or improper purpose. United States v. Khatami, 280 F.3d 907, 911 (9th Cir. 2002). See also Arthur Andersen LLP v. United States, 544 U.S. 696, 706 (2005)(term "corruptly" associated with wrongful, immoral, depraved, or evil conduct).

The Court's instruction, therefore was sufficient to have the jury understand the culpable state of mind of defendant as the jury was not required to find that defendant knew the exact parameters of the statute he would later be convicted of violating.

III. <u>Conclusion</u>

Accordingly the Motion for a New Trial is DENIED.

    IT IS SO ORDERED.

Dated: July 1, 2010

                                     D. Lowell Jensen
                                     United States District Judge